UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SOUTHERN OIL OF LOUISIANA, LLC | * | CIVIL ACTION |
| VERSUS | * | NO. 21-2337 c/w 23-131 |
| ALLIANCE OFFSHORE, L.L.C., ET AL. | * | MAG. JUDGE CURRAULT |

**ORDER AND REASONS**

Pending before me is Sabik Oy's motion for summary judgment seeking dismissal of all claims against it. ECF No. 108. Southern Oil of Louisiana, LLC timely filed an Opposition Memorandum. ECF No. 115. Alliance Offshore LLC, the M/V MR CADE, and Seatran Marine, LLC initially filed an Opposition Memorandum but later withdrew it and repudiated the arguments raised therein. ECF Nos. 113, 128, 129. Sabik Oy timely filed a Reply Memorandum. ECF No. 116. No party requested oral argument. *See* E.D. La. Local Rule 78.1.

In accordance with the parties' unanimous consent, the Honorable Lance Africk referred this matter to the undersigned magistrate judge for resolution pursuant to 28 U.S.C. § 636(c). ECF Nos. 39, 58 in 21-2337 and ECF No. 16 in 23-131. After having considered the record, the submissions and arguments of counsel, and the applicable law, Sabik Oy's motion for summary judgment is DENIED for the reasons stated herein.

I.  **BACKGROUND**

  A.  **Procedural Background**

Invoking FED. R. CIV. P. 9(h), Southern Oil of Louisiana, LLC filed this admiralty and maritime claim against Alliance Offshore, LLC, SeaTran Marine, LLC, Iberia Crewboat & Marine

1

Services, LLC,[1] Mr. Cade, LLC, and the M/V MR CADE[2] to recover for damages sustained on December 2, 2022, when the M/V MR CADE allided with Southern Oil's offshore oil platform located in Main Pass Block 45 (the "Corvus platform").  ECF No. 10 ¶¶ 1-10.  Alliance, SeaTran and Mr. Cade, LLC answered and filed a counterclaim alleging that Southern Oil's platform was not properly lighted and lacked a foghorn to alert vessels of its presence, which they allege caused the allision and consequent damage.  ECF No. 13 ¶¶ 8-10.  By Third Amended Complaint, Southern Oil added Sabik Oy as a defendant, alleging that Sabik Oy designed, manufactured, marketed, and sold a defective Carmanah-branded lantern, which Southern Oil placed on its platform.  ECF No. 50 ¶¶ 2, 7, 10-28.[3]

On January 10, 2023, Alliance and the M/V MR CADE filed a proceeding for exoneration or limitation, which was docketed as No. 23-131.  ECF No. 1 in No. 21-2337.  The court established a February 13, 2023 bar date for any person seeking to file a claim.  ECF No. 5 in No. 23-131, at 2.  Southern Oil and Jeremy Turner answered and filed claims, and Turner filed an Amended Claim and Complaint.  ECF Nos. 6, 7 in No. 23-131 and ECF No. 83 in No. 21-2337.[4] The limitation proceedings was consolidated with the earlier-filed action.  ECF No. 19 in No. 21-2337.

The discovery deadline expired on March 15, 2024, and a bench trial on liability is set to begin on July 22, 2024, with the damages portion beginning on September 23, 2024.  ECF Nos. 105, 127.

---

[1] Plaintiff voluntarily dismissed its claims against Iberia Crewboat & Marine Services, LLC. ECF No. 11.
[2] Plaintiff voluntarily dismissed its claims against the M/V MR CADE. ECF No. 26.
[3] By Second Amended Complaint, Southern Oil added Carmanah Technologies Corp. as a defendant, asserting that it purchased lanterns for its platform from Carmanah, but the lanterns were defective and inoperable on the night of the allision; it later voluntarily dismissed those claims without prejudice. ECF No. 44 ¶¶ 10-28; No. 46.
[4] The Court granted Turner's motion to bifurcate and ordered that trial of the matter be bifurcated into two phases: (1) liability, including exoneration or limitation of liability and apportionment of fault, and (2) damages. ECF No. 77.

B. **Factual Background**

The M/V MR CADE allided with Southern Oil's fixed, charted, unmanned Corvus platform located offshore in Main Pass Block 45. ECF Nos. 108-14, 113-6, 115-7 ¶ 1. The platform had two U.S. Coast Guard approved M650H lanterns, one on the northwest side and one on the southeast side. *Id.* ¶¶ 2, 4. At the time of the allision, Christopher Tyndall was in command of the M/V MR CADE, and he testified that the lantern on one side of the platform was unlit.[5] The parties dispute whether Southern Oil properly performed inspections or maintenance on the lantern after installation.[6]

According to the M650H User Manual, the lantern is "a self-contained, high performance, low-maintenance, and easy to install solar-powered light source . . . suitable for a range of marine and obstruction applications. . . . visible from up to approximately 4 nautical miles . . . [and o]ffers dusk-to-dawn operation . . . ."[7] With regard to solar charging, the "easiest way to charge the Battery Pack is to put the M650H in a sunny location. The M650H charges automatically whenever it is exposed to sufficiently intense light. The M650H's charging system continuously monitors solar conditions, and uses a sophisticated Maximum Point Power tracking (MPPT) algorithm to automatically adjust charging parameters to most efficiently charge the Battery Pack. The M650H charging system avoids overcharging the Battery Pack, maximizing its life."[8] The user manual indicated an expected battery life of five years, depending on various factors, and the lantern included a diagnostic system for the battery.[9]

---

[5] ECF No 108-2 at 9, 15, 27-29 (Deposition of Tyndall, at pp. 91, 165, 329-330, 354); *see also* ECF No. 108-3.
[6] ECF No. 108-14 & ECF No. 115-7 ¶¶ 11-12; *see also* ECF No. 108-7 at 5-6 (Schexnider Deposition at pp. 34-35) (testifying that, whenever they were making their rounds, they would clean the lights and cover them to make sure they were blinking). Although Southern Oil cites to its Rule 30(b)(6) deposition at p. 93 (ECF No. 115 at 17 n.56), it failed to attached page 93 to Exhibit 6, attaching only pages 60 and 117 from that deposition. Other parties likewise attached excerpts from the Rule 30(b)(6) deposition (ECF No. 108-13, No. 113-1), but none included page 93.
[7] ECF No. 108-12 at 5.
[8] *Id.* at 21.
[9] *Id.* at 21-23.

Essi Corporation purchased two M650H lanterns, which bore serial numbers 1560059508 and 1560059732, from Flash Technology on July 25, 2019, and sold them to United Control Services on November 18, 2019. ECF No. 108-14 ¶ 5; ECF No. 108-9 at 4-6. Although no one disputes that the lantern was installed on Southern Oil's Corvus platform, Sabik Oy contends that Southern Oil cannot establish that it purchased the fixture because neither Southern Oil nor United Control Systems has documentation reflecting the sale, while Southern Oil asserts that United Control System purchased the lantern as an agent for Southern Oil.[10]

Bryan Miller, an experienced marine electrician employed by United Control Services who had serviced the Corvus well for 20 years, installed the lantern at issue on March 8, 2021.[11] He obtained the lantern from the top of a 55-gallon drum on Breton Sound 51A platform or on top of a tool shed on the Breton Sound 51B platform.[12] Shane Schexnider (lead operator for Inland Marine on contract to Southern Oil) assisted Mr. Miller with the installation on March 8, 2021. He testified that the lanterns were not brand new when installed; they had come off of another facility and had been stored at Breton Sound 51.[13] No party provided any evidence regarding when the lantern was installed at the earlier facility, which earlier facility was involved, why the lantern was removed from that earlier facility, or when the lantern was removed from that earlier facility.

Miller testified that the lantern he installed appeared to be in good condition, clean and fairly new, without visible damage or fading on its lens, and he installed the lantern without issue, checking to see if it started flashing which indicates that it worked.[14] Miller was unaware that he

---

[10] ECF No. 108-14 ¶ 8; No. 115-7 ¶ 8.
[11] Although the undisputed facts indicate that Mr. Miller installed the two lanterns on March 8, 2021, Mr. Miller testified that he installed one lantern on March 8, 2021. *Compare* ECF Nos. 108-14, 113-6, 115-7 ¶ 6 *with* ECF No. 113-1 at 10 (Southern Oil Rule 30(b)(6) Deposition via excerpts through designated representative Brian Miller, at p. 16:4-9).
[12] ECF Nos. 108-14, 113-6, 115-7 ¶¶ 4, 9; *see also* ECF No. 113-1 at 10 (Southern Oil Rule 30(b)(6) Deposition).
[13] ECF No. 108-7 at 4 (Schexnider Deposition, p. 30:1-15).
[14] ECF No. 113-1 at 13-16 (Miller Deposition, pp. 32-36).

could open the bottom of the lantern to check the battery.[15]  Miller did not recall whether he obtained a copy of the M650H User Manual, and indicated that, when he needed a lantern, they were usually not in a box and were just given to him for installation.[16]  The lantern's box would have included (1) the lantern, (2) one bird deterrent, and (3) an illustrated quick start guide.[17]  The user manual is separate and available for download from the carmanah.com website.[18]

Southern Oil's expert George Mahl removed the lanterns on June 6, 2022, and the parties conducted a joint inspection of the lanterns on October 17, 2023.  ECF No. 108-14 ¶¶ 15, 16.

## II.  THE SUMMARY JUDGMENT MOTION

Southern Oil and Alliance asserted claims of (1) maritime products liability alleging defective design and construction of the lantern; (2) Rule 14(c) tender of the Alliance defendants' counterclaim asserting admiralty negligence; (3) redhibition; (4) negligent misrepresentation; (5) breach of express warranty, (6) negligent design and construction; and (7) unfair trade practices.  ECF No. 50 ¶¶ 29-103, at 6-17.  By stipulation, Southern Oil withdrew its unfair trade practices claim, its request for punitive damages, and agreed that maritime law applies.  ECF No. 108-11 at 1.  Although Alliance initially opposed Sabik Oy's summary judgment motion, it later withdrew that opposition and adopted Sabik Oy's position.  ECF Nos. 113, 128, 129.

### A.  Sabik Oy Seeks Dismissal of All Remaining Claims Against It

Sabik Oy argues that Southern Oil cannot establish a maritime products liability claim because it has no evidence that (1) the lantern was constructed improperly, (2) any safer alternative design existed, or (3) that the design was unreasonably dangerous.  ECF No. 108-1 at 14-16.  Rather, Sabik Oy argues, Southern Oil's failure to properly install and maintain the lantern and/or

---

[15] *Id.* at 13, 17 (Miller Deposition, p. 32:8-25; p. 46:10-17).
[16] *Id*. at 11-12 (Miller Deposition, p. 26:19 – p. 27 line 18).
[17] ECF No. 113-2 at 8.
[18] *Id.*

decision to install a lantern with a known battery malfunction supersedes any alleged products liability or negligence of Sabik Oy. *Id.* at 16-17. Sabik also argues that the redhibition claim must be dismissed to maintain uniformity of federal maritime law, and even if Louisiana law could apply, Southern Oil cannot prevail because it has no evidence that it was the buyer, and the lantern passed the QA/QC inspection at the time of sale to ESSI. *Id.* at 17-19. Sabik Oy argues that the negligent misrepresentation and express warranty claims fail because Southern Oil has no evidence of any communication with Sabik Oy, that it purchased the lantern, or that it has ever seen the warranty. *Id.* at 20-21.

### B. The Opposition Memoranda

Southern Oil argues that Sabik Oy's motion for summary judgment should be denied without prejudice or continued to allow them time to complete discovery. ECF No. 115 at 7. It concedes that discovery has been extensive to date but asserts that discovery is ongoing, specifically the depositions of Sabik Oy's non-retained expert's deposition Mark Lane is scheduled for April 5, 2024 and Southern Oil's own expert George Mahl is scheduled for April 15, 2024. ECF No. 115 at 7-8. Southern Oil argues that these depositions will lead to the discovery of additional disputed facts, but it fails to specifically identify the particular disputed facts it contends will be obtained through these depositions. *Id.* at 8.

Citing its expert George Mahl's report, Southern Oil argues that material fact disputes regarding whether the light was defective in design or construction (primarily the use of an ineffective bird deterrent and premature power depletion of the battery), which caused the failure of the light. *Id.* at 9-12. Southern Oil also argues that Sabik Oy's chain of custody argument and reliance on data indicating a September 2020 battery failure are unavailing, particularly because the battery failure data was not available to Southern Oil and the failure was not readily apparent

upon visual inspection of the lantern. *Id.* at 13-14. Further, Southern Oil argues that it installed the one bird deterrent shipped with the lantern and recommended for use in the user manual, and despite Sabik Oy's argument that additional bird deterrents could be installed, Sabik Oy does not sell additional deterrents on its website. *Id.* at 15-17. Southern Oil further argues that, in accordance with the M650H user manual's instructions, it cleaned the lantern top weekly and when the light was dirty with bird excrement. *Id.* at 17-18.

Southern Oil argues that the evidence establishes that Miller purchased the lantern from ESSI on behalf of Southern Oil, that Miller's failure to properly invoice Southern Oil does not alter that fact, and redhibition does not preclude an agent from purchasing a product on behalf of a principal. *Id.* at 18-19. It argues that misrepresentations regarding operation and performance of the lantern were made in the user manual, coast guard certification, and marketing materials, and Southern Oil relied on these marketplace misrepresentations in purchasing the lantern. *Id.* at 19-22. Southern Oil also argues that the light's circuit board malfunction on September 2, 2020, after the November 18, 2019, purchase establishes its claim for breach of express warranty. *Id.* at 22-23.

C. **Movant's Reply**

Sabik Oy argues that Southern has not come forward with specific facts showing there is a genuine dispute of material fact for trial. ECF No. 116 at 2. Rather, Sabik Oy argues that the undisputed facts demonstrate that the subject lantern failed to function on September 2, 2020 due to an external source (e.g., lightning strike damage) and should not have thereafter been used by Southern Oil. *Id.* It argues no additional discovery is needed, particularly of Southern Oil's own expert George Mahl. *Id.* at 3. It further argues that Lane's designation on February 7 was extremely detailed and Southern Oil has not identified any particular facts on which it needs to

question Lane or provide any data or evidence to contradict Lane. *Id.* at 3-4. Sabik Oy further cites to Alliance's expert report, which faults Southern Oil. *Id.* Sabik Oy also responds to Alliance's now withdrawn opposition, repeats its arguments previously articulated in the supporting memorandum, and counters Southern Oil's assertions that additional bird deterrents could not be found via the internet. *Id.* at 4-10.

### III. APPLICABLE LAW AND ANALYSIS

#### A. Summary Judgment Standard

When a movant shows that there is no genuine dispute of material fact to be decided by the fact-finder and the movant is entitled to a judgment as a matter of law, Rule 56 mandates that summary judgment be issued.[19] Summary judgment is not precluded by disputes over facts that are not "material"[20] and disputes that are not "genuine."[21] "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[22] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a

---

[19] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact . . ."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (stating that summary judgment shall be issued "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law") (citing FED. R. CIV. P. 56(c) (amended 2010)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

[20] "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010) (citation omitted) ("An issue is material if its resolution could affect the outcome of the action.").

[21] A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (citation omitted).

[22] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

motion for summary judgment."[23]  Thus, the court must resolve factual controversies in favor of the nonmoving party "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[24]

When the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact.  When, however, the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[25]  Summary judgment is proper if the party opposing the motion fails to establish an essential element of their case.[26]

Only evidence—not argument, not facts asserted in the complaint—will satisfy the burden.[27]  Unsworn pleadings, memoranda or the like are not competent summary judgment evidence.[28]  Further, a party's version of events that is "blatantly contradicted by the record" is not entitled to the benefit of any favorable light.[29]  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[30]  "If the

---

[23] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.
[24] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).
[25] *Celotex*, 477 U.S. at 322–25; *see also Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).
[26] *See Celotex*, 477 U.S. at 322–23.
[27] *Solo Serve Corp. v. Westowne Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).
[28] *Larry v. White,* 929 F.2d 206, 211 n. 12 (5th Cir. 1991).
[29] *See Scott v. Harris*, 550 U.S. 372, 376, 380 (2007) (holding plaintiff's selective description of car chase as "controlled" was contradicted by dashcam footage of the high-speed chase); *see also Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 40s8 (5th Cir. 2011) (holding self-serving and unsupported statement in affidavit will not defeat summary judgment where record evidence is to the contrary) (citing *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000)).
[30] *See Bickerstaff v. Whitney Nat'l Bank*, No. 96-30231, 1996 WL 595654, at *1 (5th Cir. Sept. 20, 1996) (per curiam); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (citations omitted); *see also EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) ("No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.") (citation omitted).

...
...

evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate.[31]

## B. Continuance or Denial Due to Need for Additional Discovery

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order. [32]

Likewise, if a party fails to properly address another party's fact assertion, Rule 56(e) authorizes the court to issue any appropriate order, including giving the party the opportunity to properly support or address the fact at issue. Fed. R. Civ. P. 56(e). A motion for a continuance under Rule 56(d) is "broadly favored and should be liberally granted."[33]

A party cannot evade summary judgment, however, simply by arguing that additional discovery is needed nor may a party simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.[34] Rather, Rule 56(d) imposes a burden on the non-movant to "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[35] The crucial question is "whether the evidence requested would affect the outcome of a summary judgment motion."[36]

---

[31] *Anderson*, 477 U.S. at 249 (citations omitted).
[32] FED. R. CIV. P. 56(d); *see also January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023); *Skiba v. Jacobs Ent., Inc.*, 587 F. App'x 136, 138 (5th Cir. 2014).
[33] *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006) (citing *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991)).
[34] *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006) (citations and quotations omitted).
[35] *Smith v. Regional Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016) (internal quotation marks and citation omitted).
[36] *Santee v. Oceaneering Int'l Inc.*, 95 F.4th 917, 934 (5th Cir. 2024) (citing *Smith*, 827 F.3d at 423).

...

The requested continuance may be denied where the motion fails to identify specific facts that would alter the court's analysis or in any way demonstrate how the additional discovery would likely create a genuine dispute of material fact.[37]  Further, the movant must have diligently pursued discovery.[38]

### C. Products Liability Under General Maritime Law

The Supreme Court recognized products liability, including strict liability, as part of the general maritime law in *East River S.S. Corp v. Transamerica Delaval, Inc*., 476 U.S. 858, 865 (1986).  In formulating federal maritime law, the federal courts may examine, among other sources, judicial opinions, legislation, treatises, and scholarly writings.[39]  Although the Fifth Circuit has not explicitly addressed whether the Louisiana Products Liability Act can supplement the law governing products liability under general maritime law, several judges in this court have held that state law supplements general maritime law when: (1) there is no applicable admiralty rule; (2) local and state interests predominate; and (3) the uniformity principle is not crucial.[40]

Since *East River*, numerous courts have embraced § 402A of the RESTATEMENT (SECOND) OF TORTS as the best expression of the law of products liability under the general maritime law.[41]  Section 402A of the Restatement (Second) of Torts provides:

---

[37] *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc*., 25 F.4th 360, 367 (5th Cir. 2022) (citation omitted).
[38] *Jacked Up, L.L.C. v. Sara Lee Corp*., 854 F.3d 797, 816 (5th Cir. 2017) (quotations and citation omitted).
[39] *Air and Liquid Systems Corp. v. DeVries*, 586 U.S. 446, 452 (2019) (citations omitted).
[40] *See Parekh v. Argonautica Shipping Invs. B.V*., No. 16-13731, 2017 WL 3456300, at *2 (E.D. La. Aug. 11, 2017) (Morgan, J.); *Matter of Am. River Transp., Co., LLC*, No. 18-2186, 2019 WL 2847702, at *3 (E.D. La. July 2, 2019) (Lemmon, J.); *Island Ventures, LLC v. K-Mar Supply II, LLC*, No. 20-2263, 2020 WL 6269136, at *7 (E.D. La. Oct. 26, 2020) (Brown, C.J.); *see also Transco Syndicate No. 1, Ltd. v. Bollinger Shipyards, Inc*., 1 F. Supp. 2d 608, 614 (E.D. La. 1998) (Vance, J.) (indicating the LPLA can apply to a maritime products claim when consistent with § 402A).
[41] *Authement v. Ingram Barge Co*., 977 F. Supp. 2d 606, 610 (E.D. La. 2013); *Transco Syndicate,* 1 F. Supp. 2d at 614; *Vickers v. Chiles Drilling Co*., 822 F.2d 535, 538 (5th Cir. 1987); *see also* 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5–7 (5th ed. 2012) ("The applicable substantive law of products liability in admiralty is Section 402A of the Restatement (Second) of Torts.").

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if
>
>    (a) the seller is engaged in the business of selling such a product, and
>
>    (b) it is expected to and does reach the user or consumer without substantial change in the condition on which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
>    (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
>    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

RESTATEMENT (SECOND) OF TORTS § 402A. Thus, to recover on a products liability claim under general maritime law, a plaintiff must establish: (1) the defendant sold or manufactured the product; (2) the product was unreasonably dangerous for its normal use (which includes foreseeable misuse) or defective when it left the defendant's control; and (3) the defect caused plaintiff's injury.[42] The threshold inquiry under § 402A is whether the defendant is a seller or manufacturer of the allegedly defective product.[43]

A product can be considered unreasonably dangerous for defect in design or manufacture or because of inadequate instructions or warnings.[44] Thus, a products liability claim may be premised on (1) defective design; (2) defective manufacture; and/or (3) lack of adequate warning.[45] Sabik Oy argues that summary judgment is proper in this case because no expert has identified any design or construction defect nor has any expert identified an alternative design for the product,

---

[42] *Vickers*, 822 F.2d at 538; *Authement,* 977 F. Supp. 2d at 614–15 (citing *Daigle v. L & : Marine Trans. Co.*, 322 F. Supp. 2d 717, 727 (E.D. La. 2004); 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5–7 (5th ed. 2012)); *see also Molett v. Penrod Drilling Co.*, 826 F.2d 1419, 1424 (5th Cir. 1987), abrogated on other grounds by *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) (citations omitted)).
[43] SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5–7 (5th ed. 2012); *Daigle*, 322 F. Supp.2d at 727. Although § 402A uses the term "seller," manufacturers fall within its ambit. *Reyes v. Wyeth Labs.*, 498 F.3d 1264, 1272 n.10 (5th Cir.1974); RESTATEMENT (SECOND) OF TORTS § 402A cmt. f.
[44] *See Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330, 337–39 (5th Cir. 1984); *In re M/V DANIELLE BOUCHARD*, 164 F. Supp. 2d 794, 798 (E.D. La. 2001).
[45] *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 288 (5th Cir. 1975).

citing *Sullivan v. Rowan Companies, Inc*.[46]  ECF No. 108-1 at 14-16; No. 116 at 5, 7.  In addition, it argues that no party has asserted a defect based on inadequate instructions or warnings  ECF No. 116 at 4-5.

Southern Oil has not raised a failure to warn claim, leaving only defective design or manufacture as potential avenues for recovery.  For a defective manufacture claim, the plaintiff must establish that (1) the defendant sold or manufactured a product; (2) the product was unreasonably dangerous or defective when it left the defendant's control; and (3) the defect caused the plaintiff's injury.[47]

> The rule stated in [§ 402A] applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained.[48]

To decide whether a product is defectively designed and unreasonably dangerous, courts may consider how easily the manufacturer could have designed a safer alternative product.[49]  To prove a defect in design, there must be evidence that there was a safer alternative design available at the time and that this alternative design would have prevented the risk of harm. Further, this alternative design must be both economically and technically feasible at the time the product left the control of the manufacturer.[50]  Whether expert testimony is required in a products liability case

---

[46] 952 F.2d 141, 146–49 (5th Cir. 1992) (noting that general maritime law requires expert testimony to support a claim of defective design, materials, manufacturing, or warnings).
[47] *Penn Maritime, Inc. v. Rhodes Electronic Servs., Inc*., 41 F. Supp. 3d 507, 524 (E.D. La. Aug. 19, 2014) (citing *Authement*, 977  F. Supp. 2d at 614; *see also Transco Synd. No. 1, Ltd. v. Bollinger Shipyards, Inc*., 1 F. Supp. 2d 608, 613–14 (E.D. La. 1998) (noting that these provisions extend to manufacturers).
[48] Restatement (Second) of Torts § 402A, cmt. g (Am. Law Inst. 1975).
[49] *Vickers v. Chiles Drilling Co*., 822 F.2d 535, 539 (5th Cir. 1987) (citing Louisiana and Texas cases considering alternative designs).
[50] *Id.*

13

depends on whether the alleged defect and the injury is beyond a jury's common understanding.[51] "Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition."[52]

### D. Redhibition

Sabik Oy argues that Southern Oil's redhibition claim fails for four reasons: (1) the Civil Code redhibition remedy is inconsistent with general maritime law; (2) redhibition remains an available remedy only for damage to the product itself or consequent economic loss, with any other damage falling within the exclusivity provisions of Louisiana's Products Liability Act; (3) the product was not defective; and (4) Southern Oil cannot establish that it is a buyer. ECF No. 108-1 at 17-20.

In Louisiana, a "seller warrants the buyer against redhibitory defects, or vices, in the thing sold." LA. CIV. CODE art. 2520. A claim in redhibition is akin to a claim for breach of implied warranty.[53] Privity of contract, however, is not a prerequisite to a redhibitory action.[54] Thus, a buyer may bring a redhibition claim against "all sellers in the chain of sales back to the primary manufacturer" regardless of the buyer's privity with an upstream party.[55] In addition, agency law,

---

[51] *See, e.g., Martinez v. Med. Depot, Inc.*, 434 F. Supp. 3d 537, 556 (S.D. Tex. 2020) (addressing Texas law in the durable medical device context); *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1045 (5th Cir. 2011) (noting that, under Texas law, an expert is "is generally required, not always required, to prove causation") (citing *BIC Pen Corp. v. Carter*, 346 S.W.3d 533 (Tex. 2011)); *see also Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 409 (5th Cir. 2016) (noting that expert testimony is "generally encouraged if not required" to establish a products liability claim in Texas) (citation omitted).
[52] *Emery v. Medtronic, Inc.*, 793 F. App'x 293, 295–96 (5th Cir. 2019) (quoting *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (citing *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W. 2d 703, 706 (Tex. 1970))).
[53] *Boat Serv. of Galveston, Inc. v. NRE Power Sys., Inc.*, 429 F. Supp. 3d 261, 278 (E.D. La. 2019) (citing *Coleman v. Sears Home Improvement Prods., Inc.*, No. 16-2537, 2017 WL 1089580 *7 (E.D. La. Mar. 2017)).
[54] *Datamatic, Inc. v. Int'l Bus. Machines Corp.*, 795 F.2d 458, 462 (5th Cir. 1986) (citing *Media Prod. Consultants, Inc. v. Mercedes-Benz of North Am.*, 262 La. 80, 262 So. 2d 377 (La. 1972)).
[55] *Deloach Spray Foam Insulation, LLC v. Briggs & Stratton, Corp.*, 645 F. Supp. 3d 563, 574–75 (W.D. La. 2022) (citing *Lovell v. Blazer Boats Inc.*, 2011-1666, p. 4 (La. App. 1 Cir. 10/24/12), 104 So. 3d 549, 553, n.3 (citing LA. CIV. CODE art. 2545, cmt. (d))).

or mandate, allows an owner to sue in redhibition, even when the owner is not a purchaser of the product.[56]

The application of general maritime law does not necessarily preclude application of state law. General maritime law may be supplemented with state law when: "(1) it does not conflict with an applicable act of Congress; (2) it does not work material prejudice to a characteristic feature of general maritime law; or (3) it does not interfere with the proper harmony and uniformity of the general maritime law in its international and interstate relations."[57]

The only reported decision addressing redhibition in the context of a claim subject to general maritime law held that the redhibition provisions serve to supplement general maritime law.[58] In the products liability context, although the Fifth Circuit has undoubtedly recognized that Section 402A applies to maritime products liability cases, some sections of this court continue to apply the Louisiana Products Liability Act to the extent same does not conflict with the Restatement.[59] One section, however, has found that the LPLA does not apply to general maritime products liability case because of the application of Section 402A, finding it unnecessary to apply the LPLA to "fill a gap" in general maritime law.[60]

---

[56] *425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co.*, No. 15-454, 2016 WL 1110232, at *6 (E.D. La. Mar. 22, 2016) (citation omitted).
[57] *Cole v. Oceaneering Int'l, Inc.*, No. 21-1348, 2023 WL 5411307, at *9 (E.D. La. Aug. 22, 2023) (citing *In re Antill Pipeline Const. Co., Inc.*, 866 F. Supp. 2d 563, 567 (E.D. La. 2011)).
[58] *See Tucker v. Petroleum Helicopters, Inc.*, 2008-1019 (La. App. 4 Cir. 3/23/09), 9 So. 3d 966, 972, *writ denied*, 2009-0901 (La. 6/19/09), 10 So. 3d 736.
[59] *Transco Syndicate*, 1 F. Supp. at 614.
[60] *See Parekh*, 2017 WL 3456300, at *2 (striking LPLA defenses and holding that the LPLA does not supplement general maritime law because the Supreme Court has embraced § 402A and thus there is no "gap" to fill with state law); *Matter of Am. River Transp., Co., LLC*, 2019 WL 2847702, at *3 ("[W]hile there is some authority that the LPLA may be applied to maritime actions when its provisions do not conflict with Section 402A of the Restatement (Second) of Torts, a recent case from this district analyzed the question, and determined that there is no basis to supplement the general maritime law of products liability with the LPLA.") (citations omitted).

E. **<u>Negligent Misrepresentation and Express Warranty</u>**

The Fifth Circuit has held that a negligent misrepresentation claim is cognizable under general maritime law, approvingly citing Section 552 of the Restatement (Second) of Torts for the controlling standard.[61] To state a claim for negligent misrepresentation under general maritime law, a plaintiff must allege:

(1) the defendant, in the course of its profession, supplied false information for its guidance in a business transaction;

(2) the defendant failed to exercise reasonable care in gathering the information;

(3) the plaintiff justifiably relied on the false information in a transaction that the defendant intended to influence; and

(4) the plaintiff thereby suffered pecuniary loss.[62]

A breach of express warranty claim is a recognized cause of action under the Louisiana Products Liability Act. LA. REV. STAT. § 9:2800.58; LA. REV. STAT. § 9:2800.53(6). Neither party addresses whether a general maritime products liability claim under Restatement § 402A likewise encompasses an express warranty claim or whether same is otherwise available under general maritime law. The parties appear to agree, however, that Plaintiff's express warrant claim requires it to prove (1) a statement or promise about a product or its characteristics, apart from a general opinion; (2) the express warranty induced the plaintiff to use the product; and (3) plaintiff suffered damage because the express warranty was untrue. ECF No. 108-1 at 21; No. 115 at 22-23.

---

[61] *Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 534–35 (5th Cir. 2003).
[62] *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 674 (E.D. La. 2012) (citing *Otto Candies*, 346 F.3d at 535).

IV.  **ANALYSIS**

Initially, Southern Oil fails to recognize that the discovery deadline expired on March 15, 2024.  ECF No. 105.  Notably, it has not filed a motion to extend the discovery deadline setting forth the good cause required by Rule 16.  Even if the discovery deadline were not expired, Southern Oil fails to satisfy the requirements of Rule 56(d).  Moreover, since the filing of the summary judgment motion, the scheduled discovery should have concluded and Southern Oil failed to seek to supplement its earlier filings.  In short, Southern Oil fails to identify any specified facts that probably exist and indicate how the emergent facts would influence the pending summary judgment motion, much less in an affidavit or declaration as required by Rule 56.  Additionally, although these ostensibly necessary depositions were scheduled to occur months ago, Southern Oil has not sought to supplement its Opposition with any evidence discovered from those scheduled depositions.

Existing caselaw suggests that Louisiana's redhibition provisions may supplement general maritime law in a maritime products liability case governed by Section 402A.  In this case, Southern Oil has presented evidence from its expert George Mahl, who opines that the northern lantern contained an internal construction fault that results in higher output draw on the battery that causes premature battery depletion that puts the battery into a deep cycle discharge condition. ECF No. 115-1 at 2-3.  He also identified the absence of sturdy bird spikes as a defect, which he opines allowed an accumulation of bird droppings on the lantern which blocked sunlight from the solar cells.  *Id.*

Southern Oil has produced evidence to create a genuine dispute of material fact regarding a product defect related to a higher output draw on the battery that causes premature battery depletion as well as whether it is a buyer for purposes of redhibition.  This evidence as well as the

17

conflicting evidence regarding Southern Oil's status as a buyer, what representations or express warranties were provided, and whether the lantern was defective, in either manufacture or design, preclude summary judgment.

V. **CONCLUSION**

Accordingly, for the foregoing reasons, summary judgment is not appropriate in this case.

IT IS ORDERED that the Sabik Oy's Motion for Summary Judgment (ECF No. 108) is DENIED.

New Orleans, Louisiana, this 18th day of June, 2024.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE