UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SOUTHERN OIL OF LOUISIANA, LLC | * | CIVIL ACTION |
| VERSUS | * | NO. 21-2337 c/w 23-131 |
| ALLIANCE OFFSHORE, L.L.C., ET AL. | * | MAG. JUDGE CURRAULT |

## ORDER AND REASONS

Pending before me is Alliance Offshore, LLC, Seatran Marine, LLC and the M/V Mr. Cade's (collectively, "Alliance") Motion to Exclude or Limit Certain Testimony of Whitney Louis Belanger, Jr.   ECF No. 135.   Southern Oil of Louisiana LLC timely filed an Opposition Memorandum and Alliance filed a Reply Memorandum.  ECF Nos. 138, 149. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Alliance's  Motion to Exclude or Limit Testimony  (ECF No. 135) is DENIED for the reasons stated herein.

## I.    BACKGROUND

Southern Oil of Louisiana, LLC filed a complaint seeking to recover damages from, among others, Alliance Offshore and the M/V MR CADE after the M/V MR CADE allided with Southern Oil's fixed, charted offshore oil platform located in Main Pass Block 45 (the "Corvus platform") on December 2, 2021.  ECF No. 1, ¶ 1 at 1, ¶ 10 at 3, ¶ 18 at 6.  The allision resulted in the Corvus platform being shut-in from December 2, 2021 until March 20, 2022 during repairs. ECF No. 135-2 at 1.

1

Southern Oil's petroleum engineer expert Whitney Louis Belanger, Jr. issued an expert report on June 13, 2022, concluding that Southern Oil's economic losses from the allision (i.e., deferred production and damage to the reservoir), was $216,511, which discounted at 10% per annum resulted in the present value, as of December 1, 2021, at $227,468.  ECF No. 135-2, ¶ 8 at 2.  Belanger issued a supplemental report on May 31, 2024, opining that Southern Oil's economic loss is $4,346,175, which discounted at 10% per annum, resulted in the present value, as of December 1, 2021, at $2,428,804.  ECF No. 135-3 ¶ 7, at 2.  Belanger's supplemental opinion notes a decline in production beginning in December 2022, which he opines was not caused by a variety of factors and then attributes the decline to the December 2021 allision for which repairs were completed in March 2022.   *Id.*

Alliance now seeks to exclude Belanger's supplemental report and testimony related to same under Federal Rule of Evidence 702(c)-(d).  ECF Nos. 135; 135-1 at 4.  Alliance argues that Belanger's opinions are unreliable because he fails to explain the methodology supporting his May 31, 2024 conclusion that the 9.24% decrease in production that began in December 2022, over a year after the allision, was caused by the allision and fails to identify any causal link between same.  ECF No. 135-1 at 4. This "unverified analytical leap," Alliance asserts, renders Belanger's testimony unreliable under *Daubert* and its progeny.  *Id*. at 5-8. Alliance suggests that Belanger's supplemental report only came into existence after settlement negotiations stalled.  *Id*. at 3.

 In Opposition, Southern Oil argues that Belanger's testimony is not only admissible but necessary to assist this Court in determining damages involving issues requiring specialized knowledge.  ECF No. 138. Southern Oil contends that Belanger is qualified to testify under Rule 702 because his testimony is based on his specialized knowledge and industry experience, sufficient facts and data, reliable principles of reservoir evaluation, and the reliable application of

the foregoing to the facts of this case.  *Id*. at 4.  As to the timing of Belanger's supplemental report,

Southern Oil asserts that the expert updated his report after Alliance sought leave to retain an

expert after the deadline, which the Court granted and allowed Southern Oil to update its report.

*Id*. at 6-7.  Southern Oil further explains that Belanger's supplemental report replaced assumptions

and estimates in the first report with actual production data, which it contends explains the

"significantly different evaluation."  *Id*. at 2, 6-8.

  In Reply, Alliance argues that, despite Southern Oil's assertions otherwise, Belanger's

report offers no explanation of how he reached the conclusion that the December 2022 downturn

in production was related to the allision. ECF No. 149.  Alliance also notes that Belanger fails to

explain whether the lifespan of the well contributes to an eventual downturn in production.  *Id*. at

2.  For these reasons, Alliance urges the court to exclude testimony regarding Belanger's May 31,

2024 report from trial.  *Id*.

## II. <u>APPLICABLE LAW</u>

  The proponent of expert testimony bears the burden to prove its admissibility by a

preponderance of the evidence.[1]  Federal Rule of Evidence 702 governs the admissibility of expert

testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if the proponent
> demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the
>   trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[1] *Lewis v. Cain,* 605 F. Supp. 3d 858, 861 (M.D. La. 2022) (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)).

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

In *Daubert v. Merrell Dow Pharmaceuticals*, Inc., 509 U.S. 579 (1993), the Supreme Court provided an analytical framework for determining the admissibility of expert testimony under Rule 702. The trial judge must serve as a "gatekeeper" to ensure that scientific testimony is both reliable and relevant.[2]  In doing so, the court has "considerable leeway" in how to test the reliability of evidence, determine whether such evidence is reliable, and decide whether to admit or exclude expert testimony.[3]  Rejection of expert testimony is the exception rather than the rule, and the court's role as gatekeeper "does not replace the traditional adversary system and the place of the jury within the system."[4]

"'[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"[5]  "'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"[6]

Where there is no jury, the court serves as the trier of fact.  In that case, most of the safeguards provided for in *Daubert* are not as essential.[7]  *Daubert*'s binary choice—admit or

---

[2] *See Johnson v. Arkema, Inc.* 685 F.3d 452, 459 (5th Cir. 2012) (citation omitted); *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).
[3] *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 138–39 (1997*); Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 371 (5th Cir. 2000); *Johnson v. Arkema, Inc.,* 685 F.3d 453, 458-59 (citations omitted).
[4] *Johnson v. Samsung Electronics Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011); *Scordill v. Louisville Ladder Grp., LLC,* 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003).
[5] *Primrose Operating Co. v. Nat'l Am. Ins. Co.,* 382 F.3d 546, 562 (5th Cir. 2004) (quoting U*nited States v. 14.38 Acres of Land,* 80 F.3d 1074, 1077 (5th Cir. 1996)).
[6] *Id.* (quoting 14.38 Acres of Land, 80 F.3d at 1078) (internal quotations omitted)).
[7] *Gibbs v. Gibbs,* 210 F.3d 491, 500 (5th Cir. 2000).

exclude—is less applicable for a bench trial where the judge should have discretion to admit questionable technical evidence, though not give it more weight than it deserves.[8]

## III.   <u>ANALYSIS</u>

Alliance seeks to exclude the conclusions Belanger reached in his May 31, 2024 supplemental report and any testimony associated therewith based on the purportedly unexplained, and thus unreliable, methodology he employed to conclude that Southern Oil's economic loss from the allision totals $4,346,175.00.  Specifically, Alliance disputes the suggestion that the December 2022 downturn in production resulted from the December 2021 allision.  Alliance does not appear, however, to dispute the methodology employed by Belanger, or the conclusion reached in his initial report using that same methodology.

"[N]o single measure of damages [is] definitive when a production facility or vessel is shut in for repairs because of damage caused by a negligent third party."[9]  To calculate economic loss in both reports, Belanger used a "no incident/incident" calculation, followed by a "present value" discount.  The Fifth Circuit and courts in the Eastern District of Louisiana have recognized this approach as an acceptable method to calculate economic loss from deferred production.[10]  For that reason, the decision in *Texokan Operating, Inc. v. Hess Corp.*, 89 F. Supp. 3d 903, 910 (S.D. Tex. 2015), cited by Alliance is inapposite.

---

[8] *Taylor v. B&J Martin, Inc.,* 611 F. Supp. 3d 278, 283 (E.D. La. 2020) (Zainey, J.) (quoting *Thompson v. Rowan Cos.,* No. 06-3218, 2007 WL 724646, at *1 (E.D. La. Mar. 6, 2007) (Barbier, J.) (internal quotations and citations omitted)).

[9] *In re ENSCO Offshore Co.*, 990 F. Supp. 2d 751, 762 (S.D. Tex. 2014) (citing *Nerco*, 74 F.3d at 669).

[10] *See, e.g., Nerco Oil 7 Gas, Inc. v. Otto Candies, Inc.,* 74 F..3d 667 (5th Cir. 1996) (ruling that a no incident/incident calculation was an appropriate measure of deferred production loss due to shut in of well after allision); *In re TT Boat Corp.,* No. 98-494, 1999 WL 1276837 (E.D La. Dec. 12, 1999); *AGIP Petroleum Co. v. Gulf Island Fabrication, Inc.,* 17 F. Supp.2 d 660, 661–62 (S.D. Tex. 1998) (holding that "[t]he practical and economic measure of an oil company's loss for delayed production is the difference between the net revenue flow with and without delay.");. *Cf. Taylor v. B&J Martin, Inc.*, 611 F. Supp. 3d 278, 284 (E.D. La. 2020) (discussing Supreme Court's recognition of present value method for calculation of lost wages).

Belanger's initial report explained that he estimated future cash flows for two scenarios, pre- and post-allision,[11] to determine the "present value" of the economic loss on December 1, 2021.  ECF No. 135-2 ¶ 7, at 2.  He based the pre-allision cash flow on the long-term decline trend in production of 6% per annum since 2014, which trend he identified by reviewing daily records of production provided by Southern Oil.  *Id*. ¶ 3, at 1. Belanger based the post-allision cash flow calculations on (1) actual production volumes for December 2021 through May 2022 followed by (2) volumes forecasted based on a predicted steep decline in production through October 2022 followed by the long-term decline trend of 6% per annum.  *Id.* ¶ 7.  Belanger then compared the cash flow values and determined that, on an undiscounted basis, the economic loss totaled $216,511 and $227,468 when discounted at 10% per annum.  *Id.* ¶ 8.

Belanger's supplemental report again based his pre-allision cash flow projection on the long-term decline trend in production of 6% per annum.  ECF No. 135-3 ¶ 6, at 2.  For the post-allision calculation, he again used a two-step approach, first using actual production volumes, this time for the December 2021-March 2024 period, followed by forecasted volumes.  *Id*.  This time, however, Belanger used volumes forecasted by Netherland, Sewell and Associates, Inc. for a year-end 2023 reserve report for Southern Oil.  *Id*.  Once Belanger compared the cash flows and determined an undiscounted loss of $4,346,175, he again applied a 10% per annum discount to reach a December 1, 2021 present value of $2,428,804.  Belanger also noted the Corvus well's production trend of 9.24% lower than the pre-allision trend beginning on December 28, 2022 and ruled out various explanations for the decline, including changes in water production, gas-oil ratio decline, choke changes, and accumulation of salt.  *Id*. ¶¶ 1, 4-5.  Alliance challenges Belanger's

---

[11] For both pre-and post-allision calculations, Belanger assumed the same ownership interest, oil and gas forecasted prices from NYMEX WTI Oil and Henry Hub Natural Gas Settlements of December 1, 2021, lease operating expenses, severance tax rates, ad valorem tax burden, and economic limit.  *Id*. ¶ 7, at 2.

opinion on the basis that he did not consider other factors that may have caused the decline.  ECF No. 135-1 at 7; No. 149.

Challenges to the inputs used by an expert rather than his methodology are fodder for cross-examination instead of grounds for exclusion.[12]  Alliance's objection to Belanger's conclusion that the December 2022 decline in production relates to the 2021 allision is appropriate for cross-examination.  It does not, however, implicate the reliability of his no incident/incident approach to calculating economic loss and thus does not affect the admissibility of his testimony.  Alliance will have ample opportunity to explore those conclusions on cross examination and to present countervailing evidence to demonstrate that the decline is due to other causes and thus not compensable damages in this case.

## IV.  <u>CONCLUSION</u>

 "Mindful of the reliability, accuracy, and truth-seeking objectives of the Federal Rules of Evidence, and equally mindful that this case will be tried to the Court and not a jury,"[13] the court will not exclude or limit Belanger's testimony.  Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant's Motion to Exclude or Limit (ECF No. 135) is DENIED.

New Orleans, Louisiana, this ____9th____ day of August, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[12] *Axiall Canada, Inc. v. MECS Inc.*, No. 20-1535, 2023 WL 4846187 (W.D. La. July 12, 2023) (citing *Saint Lawrence Comms., LLC v. ZTE Corp.*, 2017 WL 679623, at *2 (E.D. Tex. Feb. 21, 2017); *VeroBlue Farms USA Inc. v. Wulf*, 2023 WL 348963, at *16 (N.D. Tex. Jan. 20, 2023)).
[13] *Impala Terminals Burnside LLC v. Marquette Transp. Co. LLC,* No. 19-12584, 2021 WL 5710733, at *3 (E.D. La. Apr. 21, 2021) (Feldman, J.).